1  MICHAEL L. TURRILL (SBN 185263)
2  PAUL A. RIGALI (SBN 262948)
   **ARENT FOX LLP**
3  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
4  Telephone:  213.629.7400
5  Facsimile:   213.629.7401
   Email:  michael.turrill@arentfox.com
6          paul.rigali@arentfox.com
7
8  Michael B. Hazzard (*Admitted Pro Hac Vice*)
   Adam Bowser (*Admitted Pro Hac Vice*)
9  **ARENT FOX LLP**
   1717 K Street NW
10 Washington, DC  20036
11 Telephone:  202.857.6000
   Facsimile:   202.857.6395
12 Email:  michae.hazzard@arentfox.com
13         adam.bowser@arentfox.com
14
15 Attorneys for Defendant
   CALLFIRE, INC.
16
17              UNITED STATES DISTRICT COURT
18            SOUTHERN DISTRICT OF CALIFORNIA
19
20 CARRIE COUSER,                      Case No.  3:12- CV-2575 LAB (WVG)
21            Plaintiff,               *Assigned to Hon. Larry A. Burns*
22    v.                               **REPLY IN SUPPORT OF
                                       CALLFIRE, INC.'S MOTION TO
23 PRE-PAID LEGAL SERVICES,            DISMISS FIRST AMENDED CLASS
   INC. d/b/a LEGAL SHIELD, *et al.*,  ACTION COMPLAINT FOR
24                                     DAMAGES**
            Defendants.
25                                     Date:         September 30 2013
                                       Time:         11:30 a.m.
26                                     Courtroom:    14A
27
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

# **TABLE OF CONTENTS**

I.  INTRODUCTION AND SUMMARY OF THE ARGUMENT ....................1

II.  REQUIRING PLAINTIFF TO PUT CALLFIRE ON NOTICE OF THE ALLEGATIONS SPECIFIC TO CALLFIRE IS NOT A HEIGHTENED PLEADING STANDARD ....................................................3

III.  CALLFIRE'S TERMS OF SERVICE ARE PROPERLY BEFORE THE COURT ............................................................................................6

IV.  IF THE COURT DECLINES TO DISMISS THE AMENDED COMPLAINT, THE COURT SHOULD REFER THE MATTER TO THE FCC ...........................................................................................9

V.  CONCLUSION ......................................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Arent Fox LLP
Attorneys At Law
Los Angeles

REPLY ISO OF MOTION TO DISMISS;
CASE NO.  3:12- CV-2575 LAB (WVG)
)

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**FEDERAL CASES**

4

5
6

*All American Semiconductor, Inc. v. Peoplesoft, USA, Inc.,*
   CIV No. 07-12963-BKC-LMI, 2010 WL 2854153, at 10
    (S.D. Fla. July 20, 2010) ............................................................... 5

7

*Beyard v. Caddo Parish Comm'n,*
   CIV No. 06-2296, 2007 WL 1741970 (W.D. La. Apr. 27, 2007) ............................ 5

8
9

*Broam v. Bogan,*
   320 F.3d 1023 (9th Cir. 2003) ............................................................ 3

10

*Fed. Power Comm'n v. Louisiana Power & Light Co.,*
   406 U.S. 621 (1972) .................................................................. 11

11

*Garcia v. Seterus, Inc.,*
   CIV No. 12-2049-LJO-SAB, 2013 WL 1281565 (E.D. Cal. Mar. 27, 2013) ........... 5

12
13

*Glauser v. Twilio, Inc.,*
   CIV No. 11-2584 PJH, 2012 WL 259426 (N.D. Cal. Jan. 27, 2012) ............. 11, 12

14

*Hart v. Comcast of Alameda,*
   CIV No. 07-6350 PJH, 2008 WL 2610787 (N.D. Cal. June 25, 2008) ................ 11

15
16

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
   Protection Act (TCPA) of 1991,*
   Docket No. 02-278, FCC 03-153 ...................................................... 10

17
18

*In re Sony Gaming Networks and Customer Data Security Breach Litigation,*
   903 F. Supp. 2d 942 (S.D. Cal. 2012) .................................................. 8

19

*Petrovic v. Princess Cruise Lines, LTD.,*
   CIV No. 12-21588, 2012 WL 3026368 (S.D. Fla. July 20, 2012) ........................... 5

20

*Riehle v. Bank of America, N.A.,*
   CIV No. 13-251-PHX-NVW, 2013 WL 1694442 (D. Ariz. Apr. 18, 2013) ............. 5

21
22

*Sancom, Inc. v. AT&T Corp.,*
   696 F. Supp. 2d 1030 (D.S.D. 2010) .................................................. 10

23

*Thomas v. McBride,*
   9 F.3d 1549, 1993 WL 570467 (7th Cir. Nov. 16, 1993) ...................................... 11

24
25

**FEDERAL STATUTES**

26

42 U.S.C. 1981, 1983 ..................................................................... 5

27

**RULES**

28

Fed. R. Civil Rule 7.1.................................................................. 1

Fed. R. Civ. P. 8(a)(2) ......................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1, 3, 8, 12

Fed. R. Rule 8 ................................................................................................ 2, 5

Fed. R. Rule 11 ..................................................................................................... 6

**REGULATIONS**

47 C.F.R. § 1.2(a) ................................................................................................. 9

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

REPLY ISO OF MOTION TO DISMISS;
CASE NO.  3:12- CV-2575 LAB (WVG)

1    Defendant CallFire, Inc. ("CallFire"), through counsel and pursuant to Fed.

2    R. Civ. P. 12(b)(6), Local Civil Rule 7.1 and the doctrine of primary jurisdiction,

3    respectfully files this Reply in Support of its Motion to Dismiss the First Amended

4    Class Action Complaint for Damages (ECF No. 28).

5    **I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT**

6        CallFire demonstrated that Plaintiff's Amended Complaint (ECF No. 25)

7    should be dismissed as to CallFire because Plaintiff's allegations concerning

8    CallFire fail to plausibly state a claim that CallFire made any calls to Plaintiff, let

9    alone made calls in violation of the Telephone Consumer Protection Act ("TCPA").

10   Mem.[1] at 5-10.  The only allegations Plaintiff lodged specifically as to CallFire are

11   that CallFire:

12       • Provides voice and text **connectivity** to over 100,000 businesses (Am.

13         Compl. ¶ 16 (emphasis added)); and

14

15       • Is a company that advertises and **engages in text messaging** through

16         the use of automated dialers and prerecorded messages, and was an

17         agent of Legal Shield and Frick at all relevant times.  Am. Compl. ¶ 18

18         (emphasis added).

19       CallFire established that its passive provision of "connectivity" alleged by

20   Plaintiff is exactly the function that common carriers and fax broadcasters provide,

21   and such entities are exempt from TCPA liability when they "merely provid[e] the

22   network over which a subscriber" sends its messages.  Mem. at 8-9 (citing *In the*

23   *Matter of Rules and Regulations Implementing the TCPA of 1991*, 7 FCC Rcd.

24   8752, 8779-80 (1992) (quoting 2 FCC Rcd. at 2820)).  Neither the Federal

25   Communications Commission ("FCC") nor the courts have held that a passive

26   software provider's provision of connectivity is subject to TCPA liability simply by

27

28   ────────────────

[1]  Memorandum of Points and Authorities in Support of Defendant CallFire, Inc.'s Motion to Dismiss First Amended Class Action Complaint for Damages (ECF No. 28-1).

1   virtue of its customers' use of its software, and thus Plaintiff fails to state a claim.

2   *Id.* at 5-10.

3          CallFire also showed that Plaintiff's allegation that CallFire "advertises and

4   engages in text messaging" is facially irrelevant to Plaintiff's case, which concerns

5   prerecorded voice calls allegedly sent to Plaintiff. *Id.* at 7 n.8. Indeed, in her

6   Opposition,[2] Plaintiff concedes that "this case centers on Defendant's [*sic*] *phone*

7   *calls* to Plaintiff's *cellular phone*." Opp. at 14:22-23 (emphasis in original); *see*

8   *also* Am. Compl. ¶ 26 (alleging that "at the express instruction and guidance of

9   Legal Shield, through Legal Shield's employee and representative, Frick," Plaintiff

10   received calls "using an 'artificial or prerecorded voice.'"). Thus, even taking this

11   allegation as true, Plaintiff fails to state a plausible claim that CallFire made the

12   voice calls to Plaintiff at issue in this case.

13          Alternatively, CallFire demonstrated that if the Court declines to dismiss the

14   claim against CallFire entirely, it should refer the case to the FCC under the

15   primary jurisdiction doctrine. Mem. at 11-16. As the expert agency with the

16   responsibility for implementing and enforcing the TCPA, the FCC should have an

17   opportunity in the first instance to address Plaintiff's attempt to expand liability

18   under the TCPA far beyond its intended scope to include software providers like

19   CallFire.

20          Plaintiff admits that she never alleges that CallFire had any influence on the

21   prerecorded messages that she allegedly received. *See* Opp. at 10:7-9 ("CALLFIRE

22   is correct to claim that Plaintiff did not allege" that CallFire had any "influence on

23   the prerecorded messages" allegedly received by Plaintiff). Nevertheless, through

24   her Opposition, Plaintiff attempts to rewrite her allegations to make it appear that

25   she alleged that it was CallFire itself making these calls all along, rather than her

26   scattershot approach of accusing the "Defendant*s*" collectively, a practice which

27   fails to satisfy the requirements of Rule 8. Mem. at 5 (citing Fed. R. Civ. P.

28   _____
[2] Plaintiff's Opposition to Defendant CallFire's, Inc.'s Motion to Dismiss Amended Complaint (ECF No. 34).

1   8(a)(2)).  The Court, however, should disregard Plaintiff's revisionist reading of her

2   already Amended Complaint.  *See Broam v. Bogan*, 320 F.3d 1023, 1034 (9th Cir.

3   2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not

4   look beyond the complaint to a plaintiff's moving papers").

5         Further, Plaintiff asserts throughout her Opposition that CallFire

6   impermissibly contradicts her allegations against CallFire, without ever detailing

7   exactly how CallFire explaining its provision of connectivity contradicts her

8   threadbare allegations.  Instead, CallFire properly included material with its Motion

9   so that the Court can consider whether CallFire's provision of connectivity can

10  violate the TCPA (it cannot), and to provide the necessary context for CallFire's

11  alternative request to refer the issues relating to CallFire to the FCC.  Thus, even if

12  the Court were to consider Plaintiff's revisionist reading of her Amended

13  Complaint and the inapposite legal authority relied upon by Plaintiff, for the

14  reasons discussed below, Plaintiff fails to demonstrate that her claims should not be

15  dismissed, or alternatively, that this case should not be referred to the FCC.

16  **II.    REQUIRING PLAINTIFF TO PUT CALLFIRE ON NOTICE OF THE**

17         **ALLEGATIONS SPECIFIC TO CALLFIRE IS NOT A HEIGHTENED**

18         **PLEADING STANDARD**

19         CallFire demonstrated that the only relevant[3] allegation directed against the

20  service that CallFire provides – its provision of "connectivity" through its self-

21  service and web-based software platform – is insufficient to establish that CallFire

22  "makes" any calls in violation of the TCPA.  Mem. at 5-6.  CallFire further

23  established that Plaintiff's practice of lumping all of the Defendants together fails to

24  satisfy Plaintiff's obligation to put CallFire on notice as to exactly what CallFire is

25  alleged to have done that gave rise to Plaintiff's claims.  *Id.* at 5-6.

26

27  _____

28  [3]  Again, Plaintiff's allegation that CallFire "engages in text messaging through the use of automated dialers and prerecorded messages," Am. Compl. ¶ 18, is entirely irrelevant to this action because Plaintiff alleges she received prerecorded voice calls, not prerecorded text messages.

Plaintiff argues that CallFire seeks to impose a heightened pleading standard on Plaintiff, but that in any event, she "sufficiently identifies CALLFIRE as a party who made automated and prerecorded calls to Plaintiff." Opp. at 9. Plaintiff's allegation, however, is that "at the ***express instruction and guidance of Legal Shield, through*** Legal Shield's employee and representative, ***Frick, Defendants*** began contacting Plaintiff" and CallFire's provision of "connectivity" enabled this to happen. Am. Compl. ¶ 16, 26 (emphasis added). The only plausible reading of Plaintiff's Amended Complaint is that Defendant Legal Shield gave express instructions to its employee and representative, Defendant Frick, to make calls to Plaintiff, and that Defendant Frick made these calls on behalf of Defendant Legal Shield using the connectivity that CallFire's software platform enables. As CallFire has already established, the TCPA does not impose liability on an entity simply because it provides a connection to the public switched telephone network. Mem. at 6-7. If that were the case, Plaintiff's wireless carrier would be equally liable to Plaintiff for delivering the calls at issue to her.[4]

Nowhere in her Amended Complaint does Plaintiff even intimate that CallFire itself initiated any calls to Plaintiff, which she concedes is a necessary element of her claims. Opp. at 2:20-28 (citing 47 U.S.C. § 227(b)(1)(A)(iii)). Indeed, Plaintiff admits that she never alleges that CallFire had any influence on the prerecorded messages that she allegedly received. *See* Opp. at 10:7-9. It is therefore absurd for Plaintiff to assert that "because the FAC refers to each defendant as a whole (i.e., 'Defendants')" CallFire is incorrect that "the FAC simply lumps 'all of the defendants together.'"  *Id.* at 10:1-2. Lodging allegations

---

[4]  Plaintiff argues that because "CALLFIRE's business is allegedly one that offers greater connectivity between businesses and consumers, the reasonable inference is that CALLFIRE made the alleged calls." Opp. at 6:24-26. Plaintiff's wireless provider also offers greater connectivity between businesses and consumers, and it would be equally as unreasonable to infer that CallFire or Plaintiff's wireless carrier made the calls at issue here. Providing a connection in no way implies initiating content through such connection. Plaintiff's argument is comparable to stating that because road construction crews provide a connection between point A and point B, they can be liable if someone commits a traffic offense on the roads they constructed.

1   against the "Defendants" collectively necessarily "lumps 'all of the defendants
2   together.'"

3         Plaintiff's suggestion that lumping defendants together is only impermissible
4   in the context of claims involving state action or arising under "42 U.S.C. 1981,
5   1983, or RICO" is also false. *Id.* at 9:20-23. The requirements of Rule 8 "to
6   provide a short and plain statement of the claim" as it applies to each defendant
7   pertains to all claims and complaints. Fed. R. Civ. P. 8(a)(2). Indeed, CallFire
8   relied upon *Garcia v. Seterus, Inc.*, CIV No. 12-2049-LJO-SAB, 2013 WL
9   1281565 (E.D. Cal. Mar. 27, 2013), which concerned a foreclosure action and a
10  claim to quiet title, and not a claim involving state action that Plaintiff asserts
11  requires a heightened pleadings standard. *Id.* at *2. There the court dismissed the
12  complaint because it "lumps defendants and others together and fails to distinguish
13  adequately claims and alleged wrongs among defendants." *Id.* at *5. Plaintiff's
14  complaint here makes the same fatal mistake.

15        Similarly, in another foreclosure action, the court dismissed the complaint
16  because a "**plaintiff may not collectively accuse multiple defendants of**
17  **committing misdeeds through the expedience of the title 'Defendants.' Such**
18  **group pleading is not allowed.**" *Riehle v. Bank of America, N.A.*, CIV No. 13-
19  251-PHX-NVW, 2013 WL 1694442, at *2 (D. Ariz. Apr. 18, 2013) (emphasis
20  added); *see also Petrovic v. Princess Cruise Lines, LTD.*, CIV No. 12-21588, 2012
21  WL 3026368, *3 (S.D. Fla. July 20, 2012) (dismissing negligence action because
22  "**a complaint that lumps all the defendants together in each claim and provides**
23  **no factual basis to distinguish their conduct fails to satisfy Rule 8.**") (citation
24  and internal quotations omitted) (emphasis added); *All American Semiconductor,*
25  *Inc. v. Peoplesoft, USA, Inc.*, CIV No. 07-12963-BKC-LMI, 2010 WL 2854153, *
26  at 10 (S.D. Fla. July 20, 2010) (dismissing bankruptcy action because of the
27  "undifferentiated allegations that lump all the defendants together."); *Beyard v.*
28  *Caddo Parish Comm'n*, CIV No. 06-2296, 2007 WL 1741970, at *4 (W.D. La.

1   Apr. 27, 2007) ("Plaintiff's conclusory and generic allegations that lump all

2   defendants in one group are insufficient").

3        CallFire is therefore not seeking to impose a heightened pleading standard on

4   Plaintiff, but simply asking the Court to enforce the standards of pleading as they

5   currently exist.  This case has been pending for nearly a year and Plaintiff has

6   already conducted discovery against Legal Shield.  *See* ECF No. 21-1 at 3 ("In light

7   of recent discovery responses, Plaintiff has determined that the operative Complaint

8   in this case needs to be modified").  The only relevant modifications Plaintiff made

9   to her Complaint, however, involved making "Defendant" plural and to add

10  CallFire to the case because it allegedly "provides voice and text connectivity to

11  over 100,000 businesses."  Am. Compl. ¶ 16.

12       Plaintiff, however, has accused all of the Defendants of negligently sending

13  telephone calls to Plaintiff, and in the alternative, of willfully violating the TCPA.

14  CallFire, and the Court, should not have to guess what specific actions CallFire

15  allegedly took that were negligent or willful.  It is Plaintiff's obligation to provide

16  such notice to CallFire and the Court.[5]  Because Plaintiff fails to allege any facts

17  related to CallFire that would give rise to a TCPA violation as against CallFire, and

18  because Plaintiff indiscriminately lumps all of the Defendants together, the

19  Amended Complaint should be dismissed.

20  **III.   CALLFIRE'S TERMS OF SERVICE ARE PROPERLY BEFORE THE**

21       **COURT**

22       Plaintiff argues that after putting CallFire's relationship with the other

23  Defendants and its service in general at issue, she should be able to hide behind her

24  insufficient allegations and the Court should refuse to consider CallFire's Terms of

25

26  _____

27  [5]  CallFire believes that the only allegation Plaintiff could lodge against CallFire on an individual
    basis, and within the bounds of Rule 11, is that CallFire's self-service software platform does

28  provide connectivity to the telephone network.  Amendment of Plaintiff's already Amended
    Complaint would therefore be futile for the reasons CallFire has already articulated. Mem. 5-10.
    The Court should therefore dismiss CallFire from this case with prejudice.

1    Service and the declaration summarizing and authenticating the same.  Opp. at

2    13:3-15.  Plaintiff's argument fails for three reasons.

3          First, Plaintiff alleges that CallFire is the agent[6] of the other Defendants by

4    virtue of their alleged use of CallFire's provision of connectivity, Am. Compl. ¶¶

5    16, 18, and thus Plaintiff herself put CallFire's Terms of Service at issue.  As

6    explained in the Declaration of Jagannathan Thinakaran in Support of Motion to

7    Dismiss (ECF No. 28-2), "[e]very customer that utilizes CallFire's software

8    platform to send voice broadcasts is required to agree to CallFire's Terms of

9    Service before initiating any voice broadcasts."  Thinakaran Decl. ¶ 7.  Thus,

10   CallFire's authenticated Terms of Service expressly govern the relationship

11   between CallFire and all of its customers when they use CallFire's software

12   platform, including the alleged use by the other Defendants.  CallFire's Terms of

13   Service are therefore necessarily relevant to this action, and notably Plaintiff does

14   not, because she cannot, dispute the authenticity of CallFire's Terms of Service.

15   CallFire's Terms of Service are therefore "'integral' to the complaint, and [the

16   Court] can consider [their] terms in deciding" CallFire's Motion to Dismiss

17   "without converting the proceeding to one for summary judgment."  *Int'l Audiotext*

18   *Network, Inc. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995).

19

20   _____

21   [6] Plaintiff's argument that the FCC's *Dish Network Order* "actually supports Plaintiff's
     allegations of vicarious liability on the part of Defendant CALLFIRE" completely misreads this

22   decision (and hornbook law).  Opp. at 15:3-18.  There the FCC held that the *seller* on whose
     behalf calls are made can be directly liable under the TCPA if it provides "comprehensive

23   instructions as to the timing and the manner of the call," or the *seller* can be vicariously liable for
     its agent's acts under traditional common law agency principles.  *Dish Network Order*, ¶¶ 27, 34.

24   Here, Plaintiff does not, because she cannot, allege that CallFire was the seller on whose
     calls were being made.  Instead, she alleges that Defendant Legal Shield provided "***express***

25   ***instruction and guidance***" to Defendant Frick to make the calls at issue.  Am. Compl. ¶ 16.
     Taking Plaintiff's allegations as true, Defendant Legal Shield would be directly liable for any

26   TCPA violations because it was the principal expressly directing its agent Frick to make these
     calls through CallFire's software platform.  Plaintiff's "respondeat inferior" theory of liability

27   turns vicarious liability on its head by apparently arguing that a principal's agent can be
     vicariously liable for following the express instructions of the principal.  *See* Restatement (Third)

28   of Agency § 7.01 cmt d (explaining that "there is no principal [*sic*] of 'respondeat inferior'").

1    Second, CallFire's Terms of Service is publicly available, Mem. at 2 n.3, and

2 the Court can take judicial notice of a company's publicly available Terms of

3 Service. *See In re Google, Inc. Privacy Policy Litigation*, CIV No. 12-01382-PSG,

4 2012 WL 6738343, at \*4 (N.D. Cal. Dec. 28, 2012) (taking judicial notice of

5 Google's Terms of Service and ruling that a district court can consider such terms

6 "if the contract's authenticity is not contested and the complaint necessarily relies

7 on that contract."); *see also In re Sony Gaming Networks and Customer Data*

8 *Security Breach Litigation*, 903 F. Supp. 2d 942, 954 (S.D. Cal. 2012) (taking

9 judicial notice of Sony's publicly available terms of service because their

10 authenticity was not questioned and they were relevant to the case).

11    Further, the Court "need not accept as true allegations that contradict matters

12 that are … subject to judicial notice." *In re Google*, 2012 WL 6738343, at \*3.   In

13 any event, contrary to Plaintiff's conclusory assertions, CallFire's Terms of Service

14 do not contradict any allegations contained in the Amended Complaint lodged

15 against CallFire. *See*, *e.g.*, Opp. at 16:3-14. As stated above, the only relevant

16 allegation against CallFire is that its service provides "connectivity," and CallFire's

17 Terms of Service simply explain how and under what conditions that connectivity

18 is provided through CallFire's software platform.  Indeed, Plaintiff cannot

19 simultaneously admit that she never alleged that CallFire "provided a list of

20 telephone numbers, the content of the prerecorded messages, or any other influence

21 on the prerecorded messages allegedly sent by the other Defendants," Mem. at

22 7:20-8:2; Opp. at 5-9, but then assert that CallFire's Terms of Service somehow

23 contradict her allegations.  Plaintiff's argument to the contrary is pure makeweight.

24    Finally, CallFire's alternative request to have the issues related to CallFire

25 referred to the FCC was made pursuant to the primary jurisdiction doctrine, and not

26 Rule 12(b)(6).  There is no prohibition against including additional material not

27 explicitly referenced in a complaint to provide context for the Court to properly

28 consider a motion for primary jurisdiction referral, and Plaintiff certainly cites no

1  case law holding otherwise.

2       Accordingly, the Court can consider CallFire's Terms of Service and the

3  declaration summarizing and authenticating the same because (1) Plaintiff herself

4  put at issue the terms and conditions under which CallFire provides connectivity

5  through its software platform; (2) CallFire's Terms of Service are susceptible to

6  judicial notice; or (3) they are relevant to the Court's consideration of CallFire's

7  alternative request for a primary jurisdiction referral.

8  **IV.**   **IF THE COURT DECLINES TO DISMISS THE AMENDED**

9        **COMPLAINT, THE COURT SHOULD REFER THE MATTER TO**

10        **THE FCC**

11       If the Court declines to dismiss Plaintiff's Amended Complaint as against

12  CallFire, CallFire demonstrated that the Court should refer this matter to the FCC

13  because it satisfies the requirements to invoke the primary jurisdiction doctrine:

14  "(1) the need to resolve an issue that (2) has been placed by Congress within the

15  jurisdiction of an administrative body having regulatory authority (3) pursuant to a

16  statute that subjects an industry or activity to a comprehensive regulatory authority

17  that (4) requires expertise or uniformity in administration." Mem. at 11-16 (citing

18  *Syntek Semiconductor Co., Ltd. V. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th

19  Cir. 2002)).

20       Plaintiff erroneously argues that any ruling by the FCC issued pursuant to

21  the Court's referral of the issues related to CallFire could only be applied

22  prospectively.  Opp. at 17:4-9.  Plaintiff makes this argument by misleading the

23  Court as to the nature of FCC's *2012 TCPA Order*,[7] asserting that it was a

24  declaratory ruling, which the FCC issues in order to terminate a controversy or to

25  remove uncertainty. *See* 47 C.F.R. § 1.2(a).  But the *2012 TCPA Order* was a

26  Report and Order issued after a Notice of Proposed Rulemaking was released in

27  order to *change* the rules, not *interpret* existing rules. *See 2012 TCPA Order*, ¶ 16.

28

---

[7] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 27 FCC Rcd. 1830 ("*2012 TCPA Order*")

1   Although Plaintiff is correct that the FCC's regulations will require "prior express

2   written consent," as defined by the FCC, for certain types of autodialed or

3   prerecorded messages beginning on October 16, 2013, *Id.* ¶ 18, the prospective

4   nature of these rules was a function of the rules being *new*.[8]

5        Plaintiff thus misconstrues the basis of CallFire's request for a primary

6   jurisdiction referral.  CallFire would not ask the FCC to create a new exemption for

7   intermediate software providers to apply prospectively.  Rather, consistent with

8   Congressional intent and the FCC's prior decisions, CallFire would seek a

9   determination that it does not "make" calls under existing law simply by virtue of

10   providing connectivity through its software.  Despite the seemingly plain language

11   of the TCPA, a primary jurisdiction referral is entirely appropriate.  *See Sancom,*

12   *Inc. v. AT&T Corp.*, 696 F. Supp. 2d 1030, 1037-38 (D.S.D. 2010) (referring issues

13   to FCC to obtain expert guidance on terms such as "customer" and "subscribe"

14   found in telephone company's tariff and the Communications Act).

15        Here, the FCC indisputably has jurisdiction and expertise over the TCPA and

16   was tasked by Congress to implement and enforce uniform, nationwide regulations.

17   *See, e.g., Report and Order, In the Matter of Rules and Regulations Implementing*

18   *the Telephone Consumer Protection Act (TCPA) of 1991*, Docket No. 02-278, FCC

19   03-153, ¶ 83 (June 26, 2003) ("we believe that it was the clear intent of Congress

20   generally to promote a uniform regulatory scheme under which telemarketers

21   would not be subject to multiple, conflicting regulations.").  But through her

22   Amended Complaint, Plaintiff is asking the Court to apply a novel application of

23   the TCPA and expand liability beyond anything that the FCC has currently

24   addressed.

25        By analogy, under Plaintiff's legal theory, a company such as Microsoft

26   could be liable for CAN-SPAM Act violations simply because its customers could

27   use its Outlook software to send spam.  CallFire is aware of no decision, and

---

[8]  The FCC could not, consistent with the Administrative Procedure Act, do anything but
implement a rule change prospectively.

1   Plaintiff certainly cites none, where a court found that an intermediary software
2   provider "makes" a text message call under the TCPA when it does not control the
3   content, timing, or direction of the messages its customers send, just as Microsoft
4   cannot be deemed to be "sending" Outlook users' emails.

5         Indeed, Plaintiff completely ignores the similarity of the only TCPA decision
6   involving a software provider *qua* software provider's liability under the TCPA.
7   *See Glauser v. Twilio, Inc.*, CIV No. 11-2584 PJH, 2012 WL 259426 (N.D. Cal.
8   Jan. 27, 2012). Of course, the court in *Twilio* found it necessary to defer to the
9   FCC's "recognized expertise" on the precise issue CallFire seeks to refer to the
10  FCC here, i.e., "the applicability of any 'common carrier' exemption" to an
11  intermediate software provider under the TCPA. *Id.* at *2. Plaintiff provides no
12  grounds to reach a different result here except to say that the Court should close its
13  eyes as to how CallFire provides connectivity through its software platform. As
14  discussed above, however, the Court can rely on CallFire's Terms of Service, which
15  explain how CallFire's services operate, when considering CallFire's alternative
16  request for a primary jurisdiction referral.

17        Plaintiff also makes unsubstantiated allegations that she would be prejudiced
18  by any delay that results if this case were referred to the FCC. Opp. at 18. The
19  mere passage of time, however, does not suffice as a legal basis for declining to
20  invoke the primary jurisdiction doctrine. Nor does the mere passage of time,
21  without more, prejudice plaintiff.[9] As the Supreme Court explained, courts are
22  "obliged to defer" to an agency where the "issue brought before a court is in the
23  process of litigation through procedures originating in the [agency]." *Fed. Power
24  Comm'n v. Louisiana Power & Light Co.*, 406 U.S. 621, 647 (1972); *see also Hart
25  v. Comcast of Alameda*, CIV No. 07-6350 PJH, 2008 WL 2610787, at *2 (N.D. Cal.

26
27  [9] *See Thomas v. McBride*, 9 F.3d 1549, 1993 WL 570467, at *3 (7th Cir. Nov. 16, 1993) (noting
28  insufficiency of petitioner's "unsubstantiated allegations of prejudice"). Plaintiff fails to explain
    how issuing subpoenas to CallFire would be any more expensive or time consuming than issuing
    discovery requests to a party.

1   June 25, 2008) (holding the FCC had primary jurisdiction because two petitions had

2   been filed on the precise issue before the court, and the FCC announced it would

3   seek public comment).

4          The FCC is now actively considering the precise issue of whether a software

5   provider can be liable for "making" a call under the TCPA, both pursuant to the

6   Club Texting Petition previously detailed by CallFire, Mem. at 13-15, and the

7   recent *Twilio* referral.  Plaintiff submits no compelling reason why the Court should

8   waste its own resources deciding an issue within the FCC's area of expertise and

9   which it is currently addressing, simply to risk issuing a conflicting ruling on a

10  statute that requires "uniform interpretation." *Boyes*, 199 F.3d at 1265.

11  Accordingly, to the extent the Court does not dismiss the claims against CallFire

12  pursuant to Rule 12(b)(6), the Court should refer the matter to the FCC.

13  **V.    CONCLUSION**

14         For the foregoing reasons, CallFire respectfully requests this Court to grant

15  its motion to dismiss the claims alleged against CallFire in Plaintiff's Amended

16  Complaint with prejudice.  In the alternative, the Court should stay the entire case

17  or dismiss the claims against CallFire without prejudice and refer the issues related

18  to CallFire to the FCC.

19

20  Dated:  September 23, 2013                    Respectfully submitted,

21                                               **ARENT FOX LLP**

22

23                                        By: /s/ Michael L. Turrill
                                              MICHAEL L. TURRILL
24                                            PAUL A. RIGALI
                                              Attorneys for Defendant
25                                            CALLFIRE, INC.

26

27

28

*COUSER v. PRE-PAID LEGAL SERVICES, INC., et al.*
*USDC, Southern District of California Case No. 12 CV 2575 LAB (WVG)*

## CERTIFICATE OF SERVICE

I am a citizen of the United States. My business address is Arent Fox LLP, 555 West Fifth Street, 48th Floor, Los Angeles, California 90013-1065.  I am employed in the County of Los Angeles, where this service occurs.  I am over the age of 18 years, and not a party to the within cause.

On the date set forth below, according to ordinary business practice, I served the foregoing document(s) described as:

**"REPLY IN SUPPORT OF CALLFIRE, INC.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES"**

☒  (BY CM/ECF)  I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants (if any) indicated on the Manual Notice list.

☐  (BY FAX)  I transmitted via facsimile, from facsimile number 213.629.7401, the document(s) to the person(s) on the attached service list at the fax number(s) set forth therein, on this date before 5:00 p.m.  A statement that this transmission was reported as complete and properly issued by the sending fax machine without error is attached to this Proof of Service.

☐  (BY E-MAIL)  On this date, I personally transmitted the foregoing document(s) via electronic mail to the e-mail address(es) of the person(s) on the attached service list.

☐  (BY MAIL)  I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.  On this date, I placed the document(s) in envelopes addressed to the person(s) on the attached service list and sealed and placed the envelopes for collection and mailing following ordinary business practices.

☐  (BY PERSONAL SERVICE)  On this date, I delivered by hand envelope(s) containing the document(s) to the persons(s) on the attached service list.

☐  (BY OVERNIGHT DELIVERY)  On this date, I placed the documents in envelope(s) addressed to the person(s) on the attached service list, and caused those envelopes to be delivered to an overnight delivery carrier, with delivery fees provided for, for next-business-day delivery to whom it is to be served.

1

2 ☒ (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

3

4 Executed on September 23, 2013 at Los Angeles, California.

5

6 Susan Baca

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

RPP/613481.1

- 2 -

CERTIFICATE OF SERVICE

1
2

***COUSER v. PRE-PAID LEGAL SERVICES, INC., et al.***
***USDC, Southern District of California Case No. 12 CV 2575 LAB (WVG)***

3

## SERVICE LIST

4

**Attorneys for Plaintiff Carrie Couser Individually and on behalf of all other**
**similarly situated**

5
6

Abbas Kazerounian
Kazerounian Law Group, APC
245 Fischer Avenue

7

Suite D1
Costa Mesa, CA 92626

8

Tel: (800) 400-6808
Fax: (800) 520-5523

9

Email: ak@kazlg.com

10

Joshua Swigart
Hyde & Swigart

11

2221 Camino Del Rio South
Suite 101

12

San Diego, CA 92108
Tel: (619) 233-7770

13

Fax: (619) 297-1022
Email: josh@westcoastlitigation.com

14
15

Todd M. Friedman
Law Offices of Todd M. Friedman, P.C.
369 South Doheny Drive

16

Suite 415
Beverly Hills, CA 90211

17

Tel: (877) 206-4741
Fax: (866) 633-0228

18

Email: tfriedman@AttorneysForConsumers.com

19

Matthew Michael Loker
Kazerouni Law Group, APC

20

2700 North Main Street
Suite 1000

21

Santa Ana, CA 92705
Tel: (800)400-6808

22

Fax: (800)520-5523
Email: ml@kazlg.com

23
24

Robert Lyman Hyde
Hyde & Swigart
2221 Camino Del Rio South

25

Suite 101
San Diego, CA 92108

26

Tel: (619)233-7770
Fax: (619)297-1022

27

Email: bob@westcoastlitigation.com

28

1  **Attorneys for Defendant Pre-Paid Legal Services, Inc. doing business as Legal Shield**

2

3  Shannon Z Petersen
   Sheppard Mullin Richter and Hampton
   501 West Broadway
4  Suite 1900
   San Diego, CA 92101-3598
5  Tel: (619)338-6500
   Fax: (619)234-3815
6  Email: spetersen@sheppardmullin.com

7  Thomas B. Snyder
   Crowe & Dunlevy
8  20 North Broadway
   18th Floor
9  Oklahoma City, OK 93102
   Tel: (405)234-3254
10 Fax: (405)239-6651
   Email: thomas.snyder@crowedunlevy.com

11
   Timila S. Rother (Admitted *Pro Hac Vice*)
12 Crowe & Dunlevy, PC
   20 North Broadway
13 Suite 1800
   Oklahoma City, OK 73102-8273
14 Tel: (405)235-7757
   Email: timila.rother@crowedunlevy.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28