1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   CARRIER COUSER,                          CASE NO. 12-CV-2575-LAB-WVG

12                          Plaintiff,        **ORDER RE: CALLFIRE'S**
                                              **MOTION TO DISMISS**
            vs.

13

14   PRE-PAID LEGAL SERVICES, INC.
     d/b/a LEGAL SHIELD; TERRY FRICK;
15   and CALLFIRE INC.,

16                          Defendant.

17

18         This is a Telephone Communications Protection Act case in which Couser accuses

19   Defendants of making approximately 40 unsolicited and prerecorded calls to her cell phone.

20   Now before the Court is CallFire's motion to dismiss.  CallFire's basic argument is that it's

21   an "intermediate software provider" that doesn't itself control the content, destination, or

22   timing of calls, and therefore can't be liable under the TCPA.  The implication of this, of

23   course, is that if there are culprits in this case, they are Legal Shield and Frick.

24   **I.     Legal Standard**

25         A 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency

26   of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The Court must accept

27   all factual allegations as true and construe them in the light most favorable to Couser.

28   *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir.

2007).   To defeat CallFire's motion to dismiss, Couser's factual allegations needn't be detailed, but they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "some threshold of plausibility must be crossed at the outset" before a case can go forward.  *Id.* at 558 (internal quotations omitted).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

While the Court must draw all reasonable inferences in Couser's favor, it need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted).  In fact, the Court does not need to accept any legal conclusions as true.  *Iqbal*, 129 S.Ct. at 1949.  A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement."  *Id.* (internal quotations omitted). Nor does it suffice if it contains a merely formulaic recitation of the elements of a cause of action.  *Twombly*, 550 U.S. at 555.

## II.    Factual Background

This isn't a complex case.  Legal Shield is a company that provides plans, or contracts, for legal services.  CallFire is a company that provides software enabling its customer companies to send voice messages to a wide audience.  That's the Court's description of CallFire, at least.  Couser says it "provides voice and text connectivity"; CallFire more or less accepts that and says it "provides its customers various web-based applications that integrate communications services and other software services whereby its customers can utilize CallFire's software platform to develop and send their own voice broadcasts to recipients of the customers' choosing." (FAC ¶ 16; Mot. at 1.) Couser has an incentive to maximize CallFire's responsibility for the calls at issue; CallFire has the opposite incentive.

1    In any event, Legal Shield used CallFire to promote its business, and Couser alleges

2    that she received approximately 40 unsolicited promotional calls that were made with an

3    automatic telephone dialing system *and* utilized an artificial or prerecorded voice.  (FAC ¶

4    30.)  This is the most significant allegation:

5           Beginning in June 2012, at the express instruction and guidance
           of Legal Shield, through Legal Shield's employee and
6           representative, Frick, Defendants began contacting Plaintiff for
           the purpose of soliciting Plaintiff's business, on her cellular
7           telephone by way of an "automatic telephone dialing system," as
           defined by 47 U.S.C. § 227(a)(1) using an "artificial or
8           prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).
           (FAC ¶ 26.)
9

10   To be clear—because the relevant TCPA statute contains four distinct prohibitions—Couser

11   is alleging a violation of 47 U.S.C. § 227(b)(1)(A)(iii).  (FAC ¶ 26; Opp'n Br. at 2.)  This

12   makes it unlawful "to make any call (other than a call made for emergency purposes or made

13   with the prior express consent of the called party) using any automatic telephone dialing

14   system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . .

15   cellular telephone."

16   **III.   Discussion**

17          CallFire makes a number of arguments favoring dismissal of Couser's claims against

18   it.  The Court will try to tease those arguments out and address them in sequence.

19          **A.    Couser Doesn't Allege That CallFire Called Her.**

20          CallFire's first argument seems to be that Couser has failed to allege that CallFire

21   even called her.  If that's true, then naturally Couser's TCPA claims fail, because they

22   require an actual call.  47 U.S.C. § 227(b)(1)(A).

23          The Court disagrees with CallFire.  The allegations against it are thin, to be sure.

24   Couser says CallFire is a California company "that provides voice and text connectivity" and

25   "advertises and engages in text messaging through the use of automated dialers and

26   prerecorded messages," which doesn't speak to its actions in this case at all.  (FAC ¶¶ 16,

27   18.)  And then it says "Defendants began contacting Plaintiff for the purpose of soliciting

28   Plaintiff's business," which CallFire argues isn't an allegation with respect to it.  (FAC ¶ 26.)

It essentially is, though.  The whole allegation, quoted above, is that "at the express instruction and guidance of Legal Shield, through Legal Shield's employee and representative, Frick, Defendants began contacting Plaintiff for the purpose of soliciting Plaintiff's business, on her cellular telephone . . . ."  Considering that there are only three Defendants in this case—Legal Shield, Frick, and CallFire—this sentence only makes sense if "Defendants" refers to CallFire.  That is, the clear meaning of this allegation is that Legal Shield, through Frick, commissioned CallFire to contact Couser.  Thus, the Court isn't troubled by the fact that, as CallFire puts it, "Plaintiff never makes an allegation specifically as to CallFire." (Mot. at 5.)  The allegation is adequately there in ¶ 26 of Couser's complaint.

### B.   CallFire Didn't Call Couser, Anyway

CallFire's next argument is that, as a matter of fact, it isn't the party that called Couser, and this turns on a rather technical argument about how its service works that is most likely beyond the scope of a motion to dismiss.  In any event, the Court is inclined to disagree with it.

CallFire's motion to dismiss employs rather cagey language to describe its responsibility for the unwanted calls Couser allegedly received.  Initially, this language deflects responsibility and places on its customers.  For example, customers use CallFire's "software platform to develop and send their own voice broadcasts." (Mot. at 1.)  CallFire "provides its customers connectivity to transmit their own messages to the recipients they selected and at the time of their choosing." (Mot. at 2.)  The clear implication here is that CallFire just provides software while its customers actually pull the trigger and make telephone calls with that software.

But CallFire also describes its service in a way that suggests *it* actually places the calls.  For example, its Terms of Service notifies customers, "You represent and warrant that the owners of the phone numbers you provide to CallFire, to which outbound messages and broadcasts are transmitted through the Service . . . ." (Mot. at 2.)  It also says, "You further agree that CallFire is, under no circumstances, responsible for the contents and/or accuracy of your messages or broadcasts and CallFire will only transmit them . . . ."  CallFire argues

later in its motion that its role "is akin to a common carrier or software provider that simply receives instructions and transmits based on those instructions without alteration." (Mot. at 6.) This all gives the impression that CallFire *is* the caller, or certainly close enough to the caller.

Whatever the true and exact relationship between CallFire and its customers is, the Court finds it to be too fact-intensive, and certainly too disputed, to be resolved at the motion to dismiss phase in CallFire's favor. By CallFire's own words, it receives numbers from its customers and it transmits or delivers a recorded message to those numbers. That essentially makes it a caller, at least by some common-sense definition of the term, even if the customers are the chief architect of the calls.

### C.    The TCPA Wasn't Intended for CallFire

CallFire's last argument, and certainly its most substantive, is that Congress's intent, as well as numerous FCC rulings, make it very clear the TCPA isn't intended to police middlemen like CallFire that, even if they make calls in some technical sense, are commissioned to make them by another entity and bear little responsibility for the timing, content, or recipients of those calls. Couser tries to argue that this is an attempt to subject her claims to a heightened pleading standard, which isn't the case at all. CallFire's argument is simply that the TCPA doesn't apply to it on the facts alleged, not that Couser has to allege certain specific facts and has failed to do so. (The confusion seems to be that CallFire believes its lack of responsibility for the content of the calls, among other things, exempts it from TCPA liability, and Couser mistakenly reads this to mean that CallFire wants her to specifically allege the content of the calls.)

For example, a section-by-section analysis of the TCPA from the Senate Committee on Commerce, Science, and Transportation notes that its regulations "apply to the persons *initiating* the telephone call or sending the message and do not apply to the common carrier or other entity that transmits the call or message and that is not the originator or controller of the content of the call or message." S.Rep. No. 102-178 (1991), 1991 WL 211220 at *9 (emphasis added). And for its own part, speaking to the analogous instance of liability for

unsolicited faxes, the FCC has agreed that "carriers who simply provide transmission facilities that are used to transmit others' unsolicited facsimile advertisements may not be held liable . . . ." *In the Matter of Rules and Regulations Implementing the TCPA of 1991* (Oct. 16, 1992), 7 FCC Rcd. 8752, 8780.  It continued, "In the absence of a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions, common carriers will not be held liable for the transmission of a prohibited facsimile message." *Id.*  The FCC reiterated its opinion in 2003, finding that "if a common carrier is merely providing the network over which a subscriber . . . sends an unsolicited facsimile message, that common carrier will not be liable for the facsimile." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144-01, 44169 (July 25, 2003).  It also found that a "high degree of involvement" was present only if, for example, the carrier provides the facsimile numbers or reviews and controls the actual content of the facsimiles.  *Id.*

The Court is generally receptive to CallFire's arguments; it does seem that Congress and the FCC, if pressed, would absolve an entity like CallFire from liability under the TCPA for Legal Shield's promotional calls.  It is also generally dismissive of Couser's stubborn rebuttal that she *alleged* CallFire called her and that's all that matters.  Yes, the Court has to take her allegations as true at the motion to dismiss phase, but she alleges more than that CallFire called her.  She alleges that: (1) CallFire called "at the express instruction and guidance" of Legal Shield" (FAC ¶ 26); (2) CallFire provides "voice and text connectivity" (FAC ¶ 16); and (3) CallFire was Legal Shield's actual agent (FAC ¶ 18).  These allegations feed right into CallFire's argument that it is some kind of innocent middleman in Legal Shield's marketing scheme.

There are some limits, however, to what the Court can make of CallFire's legal sources.  First, with respect to the Senate report, gleaning guidance from such sources is a notoriously difficult endeavor.  *See Gonzalez v. Arizona*, 677 F.3d 383, 441 (9th Cir. 2012) ("The Supreme Court has warned us time and again not to rely on legislative history in interpreting statutes, largely because of the ease with which floor statements and committee

reports can be manipulated to create a false impression as to what the body as a whole meant.") (Kozinski, J., concurring).  Second, with respect to the FCC sources, there are a few problems.  The first is that CallFire's arguments seems somewhat incomplete; the Court can't consider the FCC sources without some argument that the *Chevron* doctrine entitles or compels it to—an argument that is quite easy to make.  *See, e.g.*, *Asher & Simons, P.A. v. j2 Global Canada, Inc.*, 2013 WL 5645354 at *2–5 (D. Md. Oct. 16, 2013).  Second, analogous as facsimile transmissions may be to the phone calls at issue in this case, they are prohibited by a different TCPA rule.  Facsimiles are covered by 47 U.S.C. § 227(b)(1)(C), and that is apparently the rule addresses by the FCC sources CallFire cites, while Couser accuses CallFire of violating 47 U.S.C. § 227(b)(1)(A)(iii).  Finally, with only pleadings to go on and no discovery as to the precise relationship between CallFire and Legal Shield, it is simply too early in this litigation for the Court to affirmatively conclude that CallFire is the middleman it claims.  That certainly looks to be the case, but CallFire well knows that the evidence it submits—for example the declaration of its COO Jagannathan Thinakaran—cannot be considered at the motion to dismiss phase.

For the above reasons, the Court rejects CallFire's argument that Couser's claim should be dismissed based upon the intent of Congress in enacting the TCPA and the FCC's rulings in administering the statute.  The motion to dismiss is therefore **DENIED**.

**D.    Alternatively, this case should be stayed.**

This brings the Court to CallFire's final argument, which is that the case should be referred to the FCC under the primary jurisdiction doctrine, especially while it is already considering the TCPA liability of software providers that merely transmit users' own messages.  The primary jurisdiction doctrine applies when "an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  It "prescribes deference to an administrative agency where (1) the issue is not within the conventional experience of judges, (2) the issue involves technical or policy considerations within the

agency's particular field of expertise, (3) the issue is particularly within the agency's discretion, or (4) there exists a substantial danger of inconsistent rulings." *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1048–49 (9th Cir. 2011).  While CallFire asks the Court to *refer* this case to the FCC, it may simply be asking the Court to *stay* this case while the FCC considers the issue at hand.  *See, e.g.*, *Glauser v. Twilio*, 2012 WL 259426 (N.D. Cal. Jan. 27, 2012).

For the reasons CallFire gives in its motion to dismiss, the Court believes the primary jurisdiction doctrine has traction in this case.  Not only that, but at least one other district court case has stayed a TCPA case while the FCC considers the question this case presents—the liability of a software provider under the TCPA.  *See Glauser* at *2–3.  Couser is right to note that *Glauser* involves text messages and not prerecorded voice messages, but for the purposes of the TCPA they are essentially the same and are actionable under the very same statutory subdivision that's at issue in this case.  *See Hickey v. Voxernet LLC*, 887 F.Supp.2d 1125, 1129 (W.D. Wash. 2012) ("A text message is a call under the TCPA.").  The Court is somewhat less receptive to Couser's argument that the plaintiff in *Glauser* specifically alleged that the defendant provided a connectivity application, while her complaint alleges that CallFire actually called Couser.   First, as the Court has said above, Couser's complaint also contains allegations that paint CallFire as a kind of middleman party.  But second, the Court presumably does *not* have to accept all of Couser's factual allegations as true for the purposes of deciding whether to invoke the primary jurisdiction defense.  After all, the consequences of invoking the doctrine aren't nearly so fatal to Couser's claims as are the consequences of granting a motion to dismiss.

Most importantly, as CallFire and the *Glauser* opinion note, the FCC is now considering the liability of so-called common carriers, which is the very issue this case ostensibly presents.  *See Glauser* at *2 ("Similarly, the specific issue whether a text message service provider qualifies as a common carrier exempt from liability pursuant to the TCPA, is also currently under submission before the FC.").  The petition under consideration would essentially extend the FCC's above-mentioned rulings with respect to facsimiles to

companies that send or transmit voice or text messages on behalf of customers.  The Court therefore finds that the primary jurisdiction doctrine has great relevance in this case. Nonetheless, whatever the FCC's ruling is, the question of liability will still turn on facts that are undeveloped here and need to be further developed, namely the precise relationship between CallFire and Legal Shield and the allocation of responsibility between them.  That is an issue on which CallFire has attempted to present substantial evidence already, but only in a one-sided manner without the benefit of adversarial discovery.  Thus, it seems to the Court that this case should go forward.  If, after taking discovery from CallFire and Legal Shield, Couser still believes CallFire is liable under the TCPA, the Court will entertain a renewed motion to stay this case under the primary jurisdiction doctrine, or, assuming the FCC has spoken to the issue by then, a motion for summary judgment.

The Court reaches this conclusion mindful that the stay order in *Glauser* came on the pleadings alone, at the motion to dismiss phase, but those pleadings were a bit more precise as to the common carrier's role and liability: "Specifically, plaintiff alleges that defendants, through their text messaging applications, tools, and/or technology, made unsolicited text calls to plaintiff and other similarly situated, without their prior expressed consent, using an automatic telephone dialer system." *Glauser* at *3.  It may be that Couser's is stubbornly sticking to her pleadings just to survive to discovery and increase the cost of this case to CallFire, but that doesn't change the Court's view that one way or another CallFire's precise relationship with Legal Shield, and the nature of its business, must be factually developed if the claims against it are to be either dismissed or stayed.  In any event, the discovery the Court imagines Couser needing from CallFire is limited, and should not impose a substantial cost on CallFire.  Likewise, any subsequent motion to stay or for summary judgment can largely repeat arguments CallFire has made in its motion to dismiss, and shouldn't require extensive legal fees.

//

//

//

- 9 -

**IV.    Conclusion**

CallFire's motion to dismiss is **DENIED**.  The Court strongly senses that it has the better arguments in this case, but those arguments simply can't be ratified at the motion to dismiss phase of this case.  Likewise, with additional discovery confirming that CallFire's responsibility for the calls at issue is what it claims, the Court would be inclined to stay this case under the primary jurisdiction doctrine, or, assuming the FCC has spoken to the issue, rule definitively on it with a motion for summary judgment.

**IT IS SO ORDERED**.

DATED:  January 16, 2014

**HONORABLE LARRY ALAN BURNS**
United States District Judge